Page and others agt. Boyd.

────────

## SUPREME COURT.

### PAGE and others agt. BOYD.

Where goods are purchased from A, at the request of B, who holds them as trustee, to sell and pay certain of the proceeds to C. B has the legal and equitable title in the goods. C has but an equitable title in the *proceeds;* and only in part of those.

In such a case, it cannot be said, as matter of law, that the purchase is made by C, as principal, through B, his agent. B is not agent but principal. C is neither principal, nor owner, nor buyer, in any sense.

Where, in such case, it was averred, substantially, that C had paid to A a large share of the purchase money for the goods, and had promised to pay the remainder if B would authorize it; which B had not done, except inferentially, *held,* that these were not such facts as constituted a statement from which the *law* alone, without the aid of a jury, would draw the conclusion that the purchase was made for the benefit of C. They were partial *evidence* of such a fact or state of things, but not an averment of such a fact.

*New-York Special Term, March,* 1855.

DEMURRER to complaint.

The complaint alleges that the plaintiffs, at the request of one

Mallon, expended large sums of money, amounting to $9,075.34, in the purchase of merchandise, which was placed in a schooner to be conveyed to Kingston, Jamaica; and that for making the purchases and their services, they were entitled to be paid the sum so expended, and $227.71, of which the defendant had notice. It then adds, that the merchandise put on board the vessel belonged to the defendant, and not to Mallon, "but were held by Mallon as trustee, to sell the same, and pay over certain of the proceeds thereof to the defendant. That the defendant has since paid $7,500 on account of such advances and commissions, but not the remainder thereof; that the plaintiffs drew their draft for such remainder on the defendant, which he *refused* to *accept*, but he promised to pay the same, if on hearing from Mallon he should authorize such payment: that Mallon did authorize such payment, and drew his draft in favor of the plaintiffs on the defendant for the amount, which the defendant refused to accept.

The defendant demurs to the complaint.

—— ———— *for defendant.*
—— ———— *for plaintiff.*

MITCHELL, Justice.   There are some general statements in the complaint which are evidently qualified, and intended to be qualified by subsequent parts; and they must be taken accordingly with such qualification, and not as absolutely as if the qualification were not added.   Thus it is said that Mallon did authorize the payment of the first draft, and drew his draft in favor of the plaintiffs on the defendant for the amount.   This evidently means that he authorized the payment by drawing the second draft, otherwise there was no need of referring to the second draft.   This being so it is plain that the authority which the defendant wanted was not furnished to him, which was an authority to pay the first draft.   The payment by the defendant of the second draft would be *prima facie* evidence that he had so much funds of Mallon's in his hands, and in no way an authority from Mallon to pay the first draft.

So the allegation, that the merchandise was not the property of Mallon, but of the defendant, is explained by what follows, stating why it was not Mallon's, namely, that "it was held by Mallon, as trustee, to sell, and pay over certain of the proceeds thereof to the defendant."

The facts, then, admitted by the complaint are, that the plaintiffs made the advances at the request of Mallon, who (at some time—perhaps even after the purchase was made—for the complaint does not say when) held the same as *trustee*, to sell the same, and pay over *certain* of the proceeds thereof to the defendant, and that the defendant has paid $7,500 on account, and has promised to pay the rest if Mallon would authorize it, which Mallon has not done. If the same facts were shown to a jury, and the trust were concealed, this might be evidence from which they might infer that the purchase was made by Mallon as the agent of, and for the benefit of the defendant, and they might have found the defendant liable. But still they are not such facts as constitute a statement from which the *law* alone, without the aid of a jury, draws the conclusion that the purchase was made for the benefit of the defendant; they are partial evidence of such a fact or state of things, but not an averment of such a fact. A jury may be bound to find a vessel unseaworthy when she commenced her voyage, if she founders at sea on the day of leaving the port, without any collision or any storm, or any visible cause; but the averment of these last facts in an answer, would not be an averment that she was unseaworthy when she commenced her voyage.

The proof that the defendant paid $7,500 of the plaintiff's claim would be partial proof of his admission of his liability for the goods purchased; but, when stated in a pleading, it is no averment of the fact that he was so liable. If it were received as such evidence, then it would be proper for the defendant to answer in the same way, and instead of taking issue on the issuable fact, whether the goods were purchased for his account, to set forth his evidence to explain why he paid that money, and state also any other evidence in his defence. The fact of the payment must, therefore, be disregarded. The facts as

alleged, then, are that the goods were bought at Mallon's request, and that he, at some time, held them as trustee, to sell, and pay *certain* of the *proceeds* to the defendant. This would show that Mallon, and not the defendant, had the legal title in the goods; that the defendant had not even an equitable title in the goods, but only in the proceeds thereof; and not in the whole of the proceeds, but only a part thereof.

When a purchase is made by one who is to have the legal title in the goods bought, and another is to have no title in the goods, but only in the proceeds, it cannot be said, as matter of law that the purchase was made by that other as principal, through the first as his agent. The first was not agent, but principal; and the last was neither principal, nor owner, nor buyer, in any sense. Whether the *cestui que trust* might not be liable in equity, if he obtained possession of the goods, or of their proceeds, is a question not raised here.

From all that appears here, Mallon may have sold all the goods and retained the proceeds, and the defendant have paid his $7,500 without receiving any benefit for it.

The demurrer is allowed with costs, with leave to plaintiffs to amend in twenty days on payment of costs.